Filed 5/12/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>A.V.,<br><br>     Defendant and Appellant. | A148307<br><br>(Sonoma County<br>Super. Ct. No. J-38094) |

**INTRODUCTION**

This case presents a question of statutory interpretation: Whether, under Welfare and Institutions Code section 786,[1] a ward's compliance with his or her probation can be satisfactory for dismissal purposes, and yet *un*satisfactory for record-sealing purposes. We hold it cannot. The court has the discretion under section 786 to find the ward has or has not substantially complied with his probation so as to be deemed to have satisfactorily completed it; but if the court finds the ward in substantial compliance so that he or she has satisfactorily completed probation, the court must dismiss the petition *and* seal the ward's records in accordance with the statute. We remand this matter to the juvenile court for sealing of A.V.'s juvenile records, as specified in section 786.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

**INTEGRATED STATEMENT OF THE CASE AND FACTS**

In September 2014, the Sonoma County District Attorney filed a section 602 wardship petition charging minor A.V., age 15, with felony possession of marijuana for sale and misdemeanor possession of concentrated cannabis. (Health & Saf. Code, §§ 11359, 11357, subd. (a).) Three juveniles were caught with hash oil and an electronic vapor cigarette on their high school campus. One of the juveniles told the police he bought them from A.V. When questioned by police, A.V. admitted he sold the items to his classmate. He later admitted to probation he used marijuana regularly.

A.V. admitted the truth of the allegations with the understanding the court would consider placing him on deferred entry of judgment (DEJ) probation. At disposition, the court placed A.V. on DEJ probation on the conditions, among others, that he complete 150 hours of community service work, write a 1,000-word essay about the effects of marijuana on the adolescent brain, refrain from using or possessing alcohol or drugs, particularly marijuana, and participate in and complete outpatient substance abuse counseling.

On March 2, 2015, probation filed a report indicating that A.V. was regularly attending school, passing all of his classes, had zero disciplinary referrals, was actively working towards completion of his community service hours and was attending an alcohol and drug offender class. He had tested negative for intoxicating substances since his review hearing in December 2014.

Then, on March 4 and 17, probation filed notices of noncompliance, alleging A.V. violated his DEJ probation by using marijuana and cocaine. On March 2, he tested positive for THC and cocaine. He also tested positive for THC on March 18. On April 1, 2015, probation reported that A.V. admitted he had smoked some marijuana he had acquired before he was placed on probation, because he was depressed about a medical diagnosis he had received. He was unsure why he tested positive for cocaine, because he did not use cocaine. His mother confirmed the medical diagnosis and depression. In

2

other respects, A.V. was in compliance with his probation. He had completed the drug and alcohol offender class through California Offender Program Services, had submitted the essay as directed by the court, and had begun Interactive Journaling.

On April 9, 2015, the court vacated deferred entry of judgment, imposed judgment, declared A.V. a ward of the court, and placed him on juvenile probation on the same and additional conditions of probation, including fines and DNA testing. The court, Judge Hardcastle presiding, stated: "[Y]ou still have an opportunity to successfully complete probation. If you do that, you will then have to petition the court for a sealing of the records at the appropriate time. It won't be done automatically, as it would have been done before. So it's not the end of the world. You still have a chance, as I say, to get it sealed, but that depends on 100 percent compliance."

On April 20, 2015, the probation department filed a notice of probation violation (§ 777) alleging that A.V. used marijuana and violated his 7:00 p.m. curfew and the terms of his community detention, by testing positive for marijuana on April 9, 2015, and leaving his house in the middle of the night while on community detention. This resulted in A.V.'s first experience in juvenile hall, where he had no negative behavioral reports and excelled in sports activities. A.V. attributed his marijuana use to stress and the influence of his current peer group, from which he intended to disassociate himself. Due to A.V.'s "record of successfully completing probation programs, excellent reports from his school, and his family support network," the probation department's screening committee unanimously agreed that home removal would not be appropriate at this time.

On April 21, 2015, A.V. admitted a probation violation. On May 5, 2015, the juvenile court reinstated probation on the same and additional terms and conditions, including that A.V. spend 30 to 45 days in juvenile hall.

On October 19, 2015, the probation department filed a notice of probation violation (§ 777) alleging that A.V. used marijuana on October 12 and was cited by

3

police for possessing marijuana on school grounds on October 16. On October 20, 2015, A.V. admitted he violated his probation.

On November 18, 2015, probation reported that since October 20, 2015, A.V. had followed his court-ordered conditions of probation and abided by his parents' directives. He was helpful around the house and respectful to his parents. He was a junior in high school, was passing all of his classes, and did not have any tardies, unexcused absences, or behavioral referrals. He had completed Interactive Journaling, and spent most of his summer break successfully completing 150 hours of community service. He had competed three weekends of weekend work crew and was attending drug and alcohol counseling once a week. He had submitted two chemical tests since October 19; both showed diminishing levels of THC.

On November 23, 2015, the court, Judge Hardcastle presiding, commended A.V. on his progress. "All right. [A.], this is the kind of report we want to see. This is great. I'm glad to see you're doing so well at school, getting tested, testing clean. You've done your community service and everything else we've thrown at you. Now we want a period of no violations." "If you continue the good behavior you had from the last VOP to this date going forward, I think you will end up with a dismissal in February. But you have to show us you can do it for more than a couple months." The court continued A.V. as a ward, reinstated his probation, with all prior orders remaining in effect, and continued the matter to February 2016 for review.

In February 2016, probation reported on A.V.'s progress. A.V. had completed all of his conditions of probation, including 150 hours of community service, Interactive Journaling, and substance abuse counseling. A.V. spent his free time with his girlfriend and applying for jobs. His mother described his behavior at home as "exceptional." Since A.V.'s last hearing in November 2015, he had submitted five chemical tests, all of them negative for intoxicating substances. He had no disciplinary issues or unexcused absences at school. However, his grades had suffered. He had one A, three Ds and was

4

failing English and algebra. On February 19, 2016, the court expressed overall satisfaction with the report but continued the matter to April for evidence of improved grades.

On April 25, 2016, probation reported that A.V. had brought his F in English up to a D. He now had one C, four Ds and an F in algebra. A.V. reported he was working toward improving his grades so he could return to his high school of choice in the fall. He had no disciplinary issues or unexcused absences. Mother continued to find A.V. well behaved and helpful at home. He walked the family dog almost daily, cleaned the pool, and worked from 5:00 p.m. to 10:00 p.m. as a dishwasher at a local restaurant several nights a week. Since the last hearing in February, A.V. had submitted six more chemical tests, all negative for intoxicating substances. The probation department recommended "that all proceedings be dismissed" because A.V. had "completed all of his Court ordered obligations, has continued to submit chemical tests negative for intoxicating substances, and is now actively employed."

On April 29, 2016, A.V.'s attorney asked the court to follow probation's recommendation to dismiss the petition and requested the sealing of A.V.'s records. The court, Judge Gnoss presiding, agreed to dismiss the proceedings. The court asked for the People's and the probation department's "position regarding [section] 786. And what the Court would have to find is he, substantially, complied with the conditions of his Probation." The court officer from probation did not oppose sealing, saying, "Your Honor, we'll leave it to the discretion of the Court." The prosecutor objected, given the fact that A.V.'s DEJ was "lifted" and A.V. then sustained two probation violations. The court agreed with the prosecutor and refused to seal the records, advising A.V., "I'm not trying to . . . say that you didn't do well on Probation. And as soon as you turn 18, you can petition the Court under [section] 781 to have this record sealed. It's not the automatic sealing under [section] 786. [¶] . . . [¶] So but the proceedings are dismissed today though; okay."

5

At the section 786 hearing on April 29, 2016, the court dismissed the petition but refused to order sealed A.V.'s juvenile records, citing A.V.'s failure on DEJ supervision and two violations of his juvenile probation as demonstrating a lack of "substantial compliance." The trial court's ruling raises a question of statutory interpretation: whether, under section 786, a ward's compliance with his or her probation can be satisfactory for dismissal purposes, and yet *un*satisfactory for record-sealing purposes.

We apply the usual rules of statutory construction to answer this question. "[O]ur primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent, ' "The court turns first to the words themselves for the answer." ' [Citations.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute). . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.) "We give the language of the statute its 'usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' " (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862, quoting *Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.) In addition, " '[w]e must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.] We must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 406.)

Section 786 authorizes the juvenile court to employ a streamlined, court-initiated procedure for dismissing juvenile delinquency petitions and sealing juvenile records in

the custody of the juvenile court, law enforcement agencies, the probation department, and the Department of Justice, when a ward "satisfactorily completes" probation or supervision, as long as the offense is not one listed in section 707, subdivision (b). (§ 786, subds. (a), (d).)  Upon the court's order dismissing the petition, the ward's arrest and other proceedings in the case "shall be deemed not to have occurred," allowing him or her to inform employers, educational institutions, or other persons that he or she has had no arrests or delinquency proceedings.  (§ 786, subd. (b).)  "Satisfactory completion" of probation or supervision has occurred if the person has no new findings of wardship, or a felony conviction, or a misdemeanor conviction involving moral turpitude, and he or she "has not failed to substantially comply with the reasonable orders of supervision or probation that are within his or her capacity to perform."  (§ 786, subd. (c)(1).)  Failure to pay restitution or restitution fines does not constitute "*un*satisfactory completion."  (§ 786, subd. (c)(2), italics added.)  The court is also authorized to seal and dismiss records relating to prior petitions that "appear to the satisfaction of the court to meet the sealing and dismissal criteria" described above and, upon request by an individual, to seal a record pertaining to an eligible record, "if the court determines that sealing the additional record will promote the successful reentry and rehabilitation of the individual."  (§786, subds. (e)(1), (e)(2).)  The balance of the statute sets forth the circumstances under which authorized persons and entities may access sealed records (§ 786, subds. (f)(1), (f)(2)), provisions related to the enforcement of victim restitution orders (§ 786, subds. (g)(1), (g)(2)) and reporting requirements (§ 786, subd. (h)), and charges the Judicial Council with promulgating rules and forms "providing for the standardized implementation of this section by the juvenile courts" (§ 786, subd. (i)).[2]

---

[2] As relevant here, section 786 provides:  "(a) If a person who has been alleged or found to be a ward of the juvenile court *satisfactorily completes* (1) an informal program of supervision pursuant to Section 654.2, (2) probation under Section 725, or (3) a term of probation for any offense, the court *shall order the petition dismissed*.  The court *shall order sealed all records pertaining to the dismissed petition* in the custody of the juvenile

7

court, and in the custody of law enforcement agencies, the probation department, or the Department of Justice.  The court shall send a copy of the order to each agency and official named in the order, direct the agency or official to seal its records, and specify a date by which the sealed records shall be destroyed.  Each agency and official named in the order shall seal the records in its custody as directed by the order, shall advise the court of its compliance, and, after advising the court, shall seal the copy of the court's order that was received.  The court shall also provide notice to the person and the person's counsel that it has ordered the petition dismissed and the records sealed in the case.  The notice shall include an advisement of the person's right to nondisclosure of the arrest and proceedings, as specified in subdivision (b).

"(b) *Upon the court's order of dismissal of the petition*, the arrest and other proceedings in the case shall be deemed not to have occurred and the person who was the subject of the petition may reply accordingly to an inquiry by employers, educational institutions, or other persons or entities regarding the arrest and proceedings in the case.

"(c)(1) For purposes of this section, *satisfactory completion of an informal program of supervision or another term of probation described in subdivision (a) shall be deemed to have occurred* if the person has no new findings of wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of supervision or probation *and if he or she has not failed to substantially comply with the reasonable orders of supervision or probation that are within his or her capacity to perform.*  The period of supervision or probation shall not be extended solely for the purpose of deferring or delaying eligibility for dismissal of the petition and sealing of the records under this section.

"(2) An unfulfilled order or condition of restitution, including a restitution fine that can be converted to a civil judgment under Section 730.6 or an unpaid restitution fee shall not be deemed to constitute unsatisfactory completion of supervision or probation under this section.

"(d) A court shall not seal a record or dismiss a petition pursuant to this section if the petition was sustained based on the commission of an offense listed in subdivision (b) of Section 707 that was committed when the individual was 14 years of age or older unless the finding on that offense was dismissed or was reduced to a lesser offense that is not listed in subdivision (b) of Section 707.

"(e)(1) The court *may, in making its order to seal the record and dismiss the instant petition pursuant to this section*, include an order to seal a record relating to, or to dismiss, any prior petition or petitions that have been filed or sustained against the individual and that appear to the satisfaction of the court to meet *the sealing and dismissal criteria otherwise described in this section.*"  (Italics added.)  The balance of section 786 codifies the circumstances under which an authorized entity may access sealed juvenile records.

*Legislative History of Section 786.*

Section 786 was added to the Welfare and Institutions Code in 2014 by Senate Bill No. 1038. (Stats. 2014, ch. 249, §2, p. 2506.) According to the Legislative Counsel's Digest, in contrast to existing law, Senate Bill No. 1038 "would additionally *require* the juvenile court to order the petition of a minor who is subject to the jurisdiction of the court dismissed if the minor *satisfactorily completes a term of probation*, as specified" and "would require the court to seal all records in the custody of the juvenile court pertaining to that dismissed petition or a petition dismissed upon satisfactory completion of a program of supervision." (Legis. Counsel's Dig., Sen. Bill No. 1038 (2013-2014 Reg. Sess.), italics added.)[3] As the bill analysis of Senate Bill No. 1038 described it, the bill provided for the "automatic dismissal" of juvenile petitions and the sealing of records if the person "satisfactorily completes" an informal program of supervision or probation. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1038 (2013-2014 Reg. Sess.) as amended June 4, 2014, p. 1.)

According to the bill analysis, Senate Bill No. 1038 was enacted to address a "serious shortcoming of our juvenile justice system." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1038 (2013-2014 Reg. Sess.) as amended Mar. 28, 2014, p. K.)

---

[3] As originally enacted, section 786 provided: "If the minor *satisfactorily completes* (a) an informal program of supervision pursuant to Section 654.2, (b) probation under Section 725, or (c) a term of probation for any offense not listed in subdivision (b) of Section 707, the court *shall order the petition dismissed, and the arrest upon which the judgment was deferred shall be deemed not to have occurred. The court shall order sealed all records pertaining to that dismissed petition in the custody of the juvenile court*, except that the prosecuting attorney and the probation department of any county shall have access to these records after they are sealed for the limited purpose of determining whether the minor is eligible for deferred entry of judgment pursuant to Section 790. The court may access a file that has been sealed pursuant to this section for the limited purpose of verifying the prior jurisdictional status of a ward who is petitioning the court to resume its jurisdiction pursuant to subdivision (e) of Section 388. This access shall not be deemed an unsealing of the record and shall not require notice to any other entity." (Stats. 2014, ch. 249, §2, p. 2506, italics added.)

9

Because existing procedures under current law required the participation of the probation department, the district attorney, and the court, the process for sealing juvenile records often involved "lengthy delays as well as significant costs . . . ." (*Ibid.*)  In addition, "many youth are unaware of their right to seal their juvenile record, or are unable to complete the process due to procedural, logistical or financial barriers." (*Ibid.*)  Senate Bill No. 1038 sought to remedy the problem by "streamlining the process for sealing a juvenile's record . . . ." (*Ibid.*)  "In doing so, this bill will further the dual purposes of the juvenile justice system:  rehabilitation and reintegration, by better ensuring that juveniles have a clear pathway to clearing their records, when in compliance with existing statutory and probationary requirements.  The bill recognizes the established role of California's Juvenile Courts as institutions of reform, not punishment, and will help individuals with juvenile records to find and hold jobs, and become fully functioning members of society." (*Id.* at pp. K–L; see Assem. Com. on Public Safety, Analysis of Assem. Bill No. 666 (2015-2016 Reg. Sess.) as amended April 9, 2015, p. 7.)

Section 786 was amended in 2015 by Assembly Bill Nos. 666 (Stats. 2015, ch. 368, §1, p. 3442) and 989 (Stats. 2015, ch. 375; §1.5, p. 3465.)  With respect to the issue under consideration here, Assembly Bill No. 666 added section (c)(1), which requires that "satisfactory completion" of supervision or probation "shall be deemed to have occurred if the person has no new findings of wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of supervision or probation and if he or she has not failed to substantially comply with the reasonable orders of supervision or probation that are within his or her capacity to perform."  As stated by its author, the goal of Assembly Bill No. 666 was to " 'reduce recidivism and . . . open pathways to college and jobs for justice-loving youth whose criminal records and histories stand in the way of employment and other re-entry opportunities.' " (Assem. Com. on Public Safety, analysis of Assem. Bill No. 666, at p. 6.)  To that end, Senate Bill No. 1038 had " 'revised the central policy and process for the sealing and

10

dismissal of charges in non-violent juvenile delinquency cases,' " but " 'in the past few months experience in the courts has revealed implementation concerns. If passed AB 666 will provide for statewide standards for the courts and ensure access of youth to jobs and higher education.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 666, at p. 6.)

The Assembly Committee report included comments by Commonweal, the bill's sponsor, expressing support for " 'better guidance to courts in determining what constitutes "satisfactory completion" of probation or supervision under Section 786.' " As relevant here, Commonweal recommended that " ' "satisfactory completion" be defined utilizing two criteria. First (drawing from . . . Section 781, the "older" sealing statute) that the individual not have been adjudicated or convicted for a new felony or misdemeanor involving moral turpitude during the period of supervision. Second, that the person did not fail substantially to comply with the reasonable orders of probation that were within his or her capacity to perform. This latter criterion is viewed as providing a "passing grade" standard for "satisfactory" completion. Many probation orders in delinquency cases are checklists of conditions that are difficult or impossible for many adolescents to perform at an "A" grade level . . . . On occasion, children on probation backslide by perhaps failing a drug test or skipping an appointment—but this does not mean that they cannot or do not rebound to a level of satisfactory overall performance. . . . [¶] Our goal, after all, is to support the re-entry, rehabilitation and employability of juveniles having justice system histories, and not to impose lifetime barriers to success based on probation performance criteria that are too rigid or unrealistic from an adolescent development perspective.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 666, at p. 10.)[4]

---

[4] Assembly Bill No. 989 primarily addressed who may access sealed records, and under what circumstances they may do so. (Stats. 2015, ch. 375, §1.5, p. 3465; see generally Sen. Com. on Public Safety, Analysis of Assem. Bill No. 989 (2015-2016 Reg.

***The Language of Section 786 Does Not Permit the Juvenile Court to Use Two Different Standards to Dismiss and Seal.***

"When referring to the completion of probation, judges and litigants often use the terms 'successful' and 'satisfactory' interchangeably. But the terms are not always interchangeable and even the same term can have different statutory definitions. Differing statutes require that care be taken to identify the statute at issue, use the correct statutory term, and apply the definition specific to that statute to avoid confusion as to the nature of the court's finding and its effect." (*In re J.G.* (2016) 3 Cal.App.5th 521, 525.) For example, successful completion of probation, for purposes of dismissal under Penal Code section 1203.4, "requires that a defendant successfully complete *every condition of probation* for 'the entire period' of probation." (*In re Timothy N.* (2013) 216 Cal.App.4th 725, 738.) By contrast, section 786 requires only "satisfactory completion" with probation and, to underscore the point, specifically defines "satisfactory completion" as "substantial compliance." (§ 786, subd. (c)(1).) Substantial compliance is not perfect compliance. Substantial compliance is commonly understood to mean "compliance with the substantial or essential requirements of something (as a statute or contract) that satisfies its purpose or objective even though its formal requirements are not complied with." (Merriam-Webster's Dict. of Law (<https://www.merriam-webster.com/legal/substantial%20compliance> (as of May 12, 2017).)

"Welfare and Institutions Code section 786, particularly as amended, is a broadly written statute, which requires sealing the records of certain juvenile offenders." *(In re Joshua R.* (2017) 7 Cal.App.5th 864, 868.) "*Satisfactory completion of probation* under section 786 has significant benefits for a juvenile offender. A minor who satisfactorily completes probation is entitled to have the petition of wardship dismissed and the records

Sess.) as amended Apr. 16, 2015.) Senate Bill No. 1171 made technical, nonsubstantive changes to the statute. (Stats. 2016, ch. 86, § 312.) Assembly Bill No. 858 added subdivision (H) and made some technical, nonsubstantive changes. (Stats. 2016, ch. 858, § 1.)

pertaining to the petition sealed. (§ 786, subd. (a).) With satisfactory completion of probation, 'the arrest and other proceedings in the case shall be deemed not to have occurred and the person who was the subject of the petition may reply accordingly to any inquiry by employers, educational institutions,' and others. (§ 786, subd. (b).)" (*In re J.G., supra,* 3 Cal.App.5th at p. 525.)

The language of section 786 is noteworthy in several respects. First, it consistently uses the word "shall." "If a person who has been alleged or found to be a ward of the juvenile court satisfactorily completes [supervision or probation], the court *shall* order the petition dismissed . . . [and] *shall* order sealed all records pertaining to the dismissed petition . . . ." (§ 786, subd. (a), italics added.) "Upon the court's order of dismissal of the petition, the arrest and other proceedings in the case *shall* be deemed not to have occurred . . . ." (§ 786, subd. (b), italics added.) "For purposes of this section, satisfactory completion of [supervision or probation] *shall* be deemed to have occurred if the person has not . . . failed to substantially comply with the reasonable orders of supervision or probation . . . ." (§ 786, subd. (c)(1), italics added.) "The word 'shall' is usually deemed mandatory, unless a mandatory construction would not be consistent with the legislative purpose underlying the statute." (*West Shield Investigations & Security Consultants v. Superior Court* (2005) 82 Cal.App.4th 935, 949, citing *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 194.) Section 786 by its terms requires both dismissal and sealing of the records upon a proper showing.

It is noteworthy also that section 786 consistently uses the terms "dismiss" and "seal" together. Subdivision (a) provides that "the court shall order the petition *dismissed*. The court shall *order sealed* all records pertaining to the *dismissed petition*." (Italics added.) It states, in subdivision (b), that "[*u*]*pon* the court's order of *dismissal* of the petition, the arrest and other proceedings in the case shall be deemed not to have occurred." (Italics added.) Subdivision (d) provides that "[a] court shall not seal a record *or* dismiss a petition pursuant to this section" in a section 707, subdivision (b) case.

13

(Italics added.) Section 786, subdivision (e)(1) describes the court's order to *seal the record and dismiss the petition* as a single order. Finally, subdivision (c)(1) states that "[f]or purposes of *this section*, satisfactory completion of an informal program of supervision or another term of probation described in subdivision (a) shall be deemed to have occurred if the person . . . has not failed to substantially comply with the reasonable orders of supervision or probation that are within his or her capacity to perform." (Italics added.) The statute takes pains to define a standard for judicial action under the statute. It defines only one standard. That standard is "satisfactory completion" of probation or supervision, as measured by substantial compliance. In our view, the plain language of section 786 supports the proposition that the court is required to use the same standard of conduct to measure a ward's satisfactory completion of probation, whether the decision is to dismiss the petition or seal the records. Put differently, nothing in the statutory language suggests that, under *this* statute, the court may apply a looser standard of satisfactory completion or substantial compliance to measure whether a ward's conduct on probation warrants dismissal of the petition, and a stricter standard of satisfactory completion or substantial compliance to measure whether sealing records pertaining to the dismissed petition is warranted.

Our conclusion is supported by the legislative purpose evidenced by the legislative history. The procedure adopted in section 786 was perceived as an antidote to the more cumbersome procedure for sealing dismissed petitions set forth in section 781. The purpose of section 786 is to speed up and facilitate the reentry into mainstream society, rehabilitation, and employability of juveniles with nonserious, nonviolent delinquency histories. The entire purpose of the statute would be frustrated by interpreting the statutory language to allow the juvenile court to use a lenient version of the substantial compliance standard to *dismiss* a delinquency petition, and a stricter standard to delay the *sealing* of the petition until a much later time under section 781. In our view, this is not what the Legislature intended.

14

In this case, the court dismissed the petition based on its implicit conclusion that A.V.'s performance on probation, while not perfect, was sufficient to justify the court's exercise of discretion in A.V.'s favor. That performance included both failed chemical tests (four of them) early on and, as probation wore on, 14 passed chemical tests; good grades and bad ones; completion of 150 hours of community service and a drug and alcohol program; exemplary behavior at home and gainful employment after school. Clearly, in the court's discretionary estimation, A.V. had "substantially complied" with the essential requirements of his probation, such that he had demonstrably achieved the rehabilitative goals of probation. That implied finding was fully supported by substantial evidence; it was not irrational or capricious on these facts, and did not constitute an abuse of discretion.

However, no greater showing under the statute was required to support the sealing of A.V.'s petition. In other words, under section 786, if A.V.'s performance was good enough to warrant dismissal of the petition, it was good enough to warrant the sealing of the petition. By reaching this conclusion, we do not restrict the court's discretion to find, or not to find, that a ward before the court has satisfactorily completed his or her probation. We hold only that, whichever way the juvenile court exercises its discretion, it applies to dismissing *and* sealing the petition. Accordingly, the court erred in refusing to seal A.V.'s petition here. "The remedy on appeal is to direct entry of the proper orders." (*In re J.G., supra*, 3 Cal.App.5th at p. 526.)

## DISPOSITION

The juvenile court's order is reversed. The matter is remanded with directions to issue an order under section 786, subdivision (a) dismissing the petition, finding satisfactory completion of probation, and ordering sealed all records pertaining to the dismissed petition in the custody of the juvenile court, law enforcement agencies, the probation department, and the Department of Justice. The court shall provide a copy of its order and notice of the order's issuance consistent with the statute.

_____
Dondero, J.

We concur:


_____
Humes, P. J.


_____
Margulies, J.


A148307  *In re A.V./People v. A.V.*

17

Trial Court:        Sonoma County Superior Court

Trial Judge:        Hon. Kenneth J. Gnoss

Counsel:

Sidney S. Hollar, under appointment by the Court of Appeal under the First District Appellate Assistant Case System, for Defendant and Appellant

Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Donna M. Provenzano and Christina Vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

A148307  *In re A.V./People v. A.V*