Filed 1/30/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | C098376 |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>   v.<br><br> K.B.,<br><br>     Defendant and Appellant. | (Super. Ct. No. 52009074) |

APPEAL from a judgment of the Superior Court of Placer County, Todd Irby, Judge.  Reversed.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

1

Minor K.B. appeals from the juvenile court's order denying his request, pursuant to Welfare and Institutions Code[1] section 786, to dismiss a juvenile justice petition and seal records pertaining to his commission of several criminal offenses, for which the juvenile court had adjudged him a ward of the court and placed him on probation. On appeal, K.B. contends the juvenile court should have dismissed the petition and sealed pertinent records because he met the requirements for "satisfactory completion" of probation, notwithstanding his subsequent admission to possessing marijuana for sale, an infraction. K.B. argues the juvenile court misinterpreted section 786, subdivision (c)(1) (hereafter subdivision (c)(1)), under which a subsequent wardship adjudication during probation does not preclude satisfactory completion unless it stems from "a felony offense or a misdemeanor involving moral turpitude."

The People disagree, arguing the phrase "for a felony offense or a misdemeanor involving moral turpitude" applies only to adult convictions and not to juvenile wardship adjudications. Consequently, the People assert that any juvenile adjudication, even an infraction, precludes satisfactory completion of probation, making K.B. ineligible for dismissal of the prior petition and sealing of pertinent records.

Though subdivision (c)(1) is not a model of clarity, we conclude K.B.'s subsequent infraction does not preclude satisfactory completion of probation. When considering the plain language of the statute in light of its purpose and to avoid absurd results, we interpret the limiting phrase "for a felony offense or a misdemeanor involving moral turpitude" to apply equally to juvenile wardship adjudications and adult convictions. Accordingly, we will reverse and remand with instructions to dismiss the petition and seal all records pertaining to the dismissed petition, in accordance with section 786.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

## BACKGROUND

In June 2020, the Placer County District Attorney's Office (District Attorney) filed an original juvenile wardship petition alleging K.B. was within the jurisdiction of the juvenile court because he had committed several criminal offenses. In October 2020, K.B. admitted to fighting in a public place, and the juvenile court placed him on probation without initially adjudging him a ward of the court. In January 2021, the court adjudged K.B. a ward of the court and continued K.B. on probation.

In June 2021, the District Attorney filed a second petition, alleging K.B. was within the jurisdiction of the juvenile court because he had committed two acts of vandalism and two burglaries. In July 2021, K.B. admitted committing these offenses, and the juvenile court continued K.B.'s wardship and probation.

In September 2021, the District Attorney filed a third petition, alleging K.B. possessed cannabis for sale, an infraction. (Health & Saf. Code, §§ 11359, subd. (a), 11357, subd. (b)(1).) In November 2021, K.B. admitted committing the offense, and the juvenile court again continued K.B.'s wardship and probation.

In January 2023, the Placer County Probation Department filed an application for dismissal of K.B.'s wardship and all juvenile court proceedings. The probation officer explained that K.B. had met all the conditions set by the court, including graduating from a seven-month treatment program, completing 40 hours of community service, maintaining sobriety, and performing all the terms and conditions of his probation. The District Attorney had no objection to the successful termination of K.B.'s probation, but opposed sealing records pertinent to the original and second petitions. K.B. and the District Attorney agreed that (1) the original June 2020 petition was not eligible for dismissal and sealing of records because of K.B.'s subsequent felony, and (2) the third September 2021 petition should be dismissed and pertinent records sealed.

The juvenile court found K.B. had (1) adhered to the terms and conditions of probation, (2) successfully completed all court ordered programs, and (3) satisfactorily met the goals of rehabilitation, and so ordered K.B.'s wardship and probation terminated. The court also ordered records pertinent to the September 2021 petition sealed and ordered briefing to address the dismissal and sealing of the disputed second petition, filed in June 2021.

K.B. argued he had only committed an infraction after being continued on probation for the June 2021 petition, which did not preclude satisfactory completion of probation. The District Attorney disagreed, arguing a juvenile wardship adjudication for any criminal offense prevented satisfactory completion of probation, disqualifying K.B. from section 786 relief.

The juvenile court interpreted subdivision (c)(1) as creating "three separate disqualifying categories": "pnew findings of wardship," or "a felony offense," or "a misdemeanor involving moral turpitude." Accordingly, the court ruled K.B. was not eligible for relief under section 786 for his second June 2021 petition. K.B. filed a timely notice of appeal with this court in April 2023. His opening brief was filed in August 2023, and this case became fully briefed on December 27, 2023.

DISCUSSION

K.B. contends the juvenile court erred by refusing to dismiss the June 2021 petition and order sealed all records pertaining to the dismissed petition, pursuant to section 786. Specifically, K.B. contends that his subsequent admission of an *infraction* in November 2021, and the resulting continuation of his wardship, does not preclude dismissal and sealing of records because only a wardship adjudication for a felony offense or a misdemeanor involving moral turpitude precludes satisfactory completion of probation under subdivision (c)(1). The People respond that the phrase "for a felony offense or a misdemeanor involving moral turpitude" only limits the types of adult convictions that preclude satisfactory completion. Because this phrase does not apply to

4

"new findings of wardship," any wardship adjudication, regardless of the severity of the underlying offense, makes K.B. ineligible pursuant to subdivision (c)(1).

Normally, we review a juvenile court's decision to dismiss a petition and seal pertinent records pursuant to section 786 for abuse of discretion. (*In re A.V.* (2017) 11 Cal.App.5th 697, 711; *In re D.H.* (2020) 58 Cal.App.5th 44, 51.) "But where, as here, the court's decision raises an issue of statutory interpretation, our review is de novo." (*In re D.H.,* at p. 51.)

"We start with the statute's words, which are the most reliable indicator of legislative intent." (*In re R.T.* (2017) 3 Cal.5th 622, 627.) " 'We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose.' " (*Ibid.*) We also "harmonize statutory provisions to avoid absurd results." (*John v. Superior Court* (2016) 63 Cal.4th 91, 96.) "If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views." (*Ibid.*) We use each of these interpretive tools in turn to construe the nebulous provision at issue here.

"Section 786 authorizes the juvenile court to employ a streamlined, court-initiated procedure for dismissing juvenile delinquency petitions and sealing juvenile records in the custody of the juvenile court, law enforcement agencies, the probation department, and the Department of Justice, when a ward 'satisfactorily completes' probation or supervision." (*In re A.V., supra*, 11 Cal.App.5th at p. 705; see § 786, subd. (a).) This dispute turns on the first sentence of subdivision (c)(1), which defines "satisfactory completion" of probation or other supervision program ordered by the juvenile court using 81 words and a single comma: "For purposes of this section, satisfactory completion of an informal program of supervision or another term of probation described in subdivision (a) shall be deemed to have occurred if the person has no new findings of

5

wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of supervision or probation and if the person has not failed to substantially comply with the reasonable orders of supervision or probation that are within their capacity to perform." (§ 786, subd. (c)(1).)

The parties, seeking to determine the scope of the phrase "for a felony offense or a misdemeanor involving moral turpitude," dispute the application of the "last antecedent" rule. "According to the last antecedent rule, '[r]elative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent.' (Sutherland, Statutes and Statutory Construction (1891) § 267, p. 349; see Black's Law Dict. [(10th ed. 2014)] pp. 1532-1533.)" (*Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 73.) "[T]he rule is most readily applied where there is a list of several items, and the modifier comes immediately after the last item on the list." (*Id.* at p. 75.) The rule does not readily resolve ambiguity when "there is no list of items followed immediately by a modifier," but rather there is a phrase immediately followed by a modifying phrase. (*Ibid.*)

So, we begin instead by construing the phrase "new findings of wardship or conviction" to determine whether the Legislature intended the phrase to create multiple antecedents in the first place. The People contend this phrase creates two "separate disqualifying categories": wardship adjudications and convictions. This is correct as far as it goes—the Legislature certainly meant to include both juvenile wardship adjudications and adult convictions within the scope of the provision. But the People's interpretation fails to explain the function of the word "findings" in this phrase.

The People seem to equate "findings of wardship" with wardship adjudications. We are not convinced for two reasons. First, wardship is not a finding; it is a disposition in a juvenile justice case. A juvenile court adjudges a minor a ward of the court following a finding that a minor is a person described in section 602, which applies to certain minors who commit criminal offenses. (§§ 725, subd. (b), 602, 702.) By using

6

the word "wardship," the Legislature must have intended to include only those cases where the juvenile court ordered wardship and not cases where the court determined a wardship adjudication was unnecessary.  (See § 725, subd. (a).)  This is similar to the operation of California's "Three Strikes" law, which only counts a prior juvenile adjudication as a "strike" if "[t]he juvenile was adjudged a ward of the juvenile court." (Pen. Code, § 667, subd. (d)(3)(D).)

Second, if "findings of wardship" and "conviction" were meant to specify two separate categories, we presume the Legislature would have used the plural, "convictions," in parallel with its use of the plural "findings."  Instead, the singular "conviction" parallels the singular "wardship," suggesting both are types of "new findings" that can disqualify a minor from dismissal and sealing of records.  This construction makes sense, as the juvenile court must find true any alleged prior adjudication or conviction in order to apply the disqualifying provision in subdivision (c)(1).

The cases cited by the People offhandedly describe "wardship findings" separately from "felony convictions" while summarizing subdivision (c)(1) but do not consider the issue in this case, so they do not support the People's argument.  (See *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 217 ["It is, of course, 'axiomatic that a decision does not stand for a proposition not considered by the court' "]; cf. *In re O.C.* (2019) 40 Cal.App.5th 1196, 1207 [concluding § 786 does not apply retroactively]; *In re A.V., supra*, 11 Cal.App.5th at pp. 704-705 [concluding juvenile courts must use the same standard for "substantial compliance" under § 786 whether dismissing a petition or sealing pertinent records].)

Having determined that wardship and conviction are best understood as two types of "findings" the juvenile court can make under subdivision (c)(1), we conclude the Legislature intended the phrase "for a felony offense or a misdemeanor involving moral turpitude" to modify the entire preceding phrase, "new findings of wardship or

7

conviction." "[T]here is only one antecedent and the qualifying phrase therefore must attach to all of it." (*In re Phelps* (2001) 93 Cal.App.4th 451, 457.) Even leaving aside the Legislature's intent to have only one antecedent, subdivision (c)(1) also fits the exception to the last antecedent rule: " ' "[W]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." ' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680-681.) Both wardship adjudications and adult convictions are equally qualified by the phrase "for a felony offense or a misdemeanor involving moral turpitude." (See, e.g., § 790, subd. (a)(1) [qualifying a wardship adjudication as "for the commission of a felony offense"]; Pen. Code, § 667, subd. (d) [defining both prior adult convictions and juvenile adjudications as a "serious or violent felony" based on the type of offense committed].) Again, this counsels against limiting the application of the qualifying phrase to only adult convictions.

Interpreting this limiting phrase consistently for juvenile adjudications and adult convictions also avoids absurd results. Under the People's construction of subdivision (c)(1), minors who turn 18 years of age during their juvenile court probation (see § 607, subd. (a)), and are convicted for an infraction in adult criminal court would not be disqualified from having a prior petition dismissed and pertinent records sealed. Meanwhile, those who remain minors and have the same infraction adjudicated in juvenile court would be disqualified. This runs counter to the whole purpose of the juvenile justice laws, which acknowledge the lesser culpability of juveniles by providing more lenient and rehabilitative procedures and dispositions. (See §§ 202, 203; *In re Jose S.* (2017) 12 Cal.App.5th 1107, 1118 ["Unlike the adult criminal justice system, which has a primary punitive purpose, reunification of a minor with his or her family and rehabilitation are the primary objectives of the juvenile system"]; Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2023) § 3.11 ["Rather than seeking to place the

8

stigma of criminality on the minor, the juvenile court law is said to be liberally construed to secure for each minor such care and guidance as will serve the welfare of the minor and the best interests of the state"]; see also *Miller v. Alabama* (2012) 567 U.S. 460, 471 ["juveniles have diminished culpability and greater prospects for reform"].)

Courts consistently interpret statutes to avoid such absurd discrepancies. In *People v. King* (1993) 5 Cal.4th 59, the court construed a statute to avoid the absurd result that a juvenile convicted of murder in adult court could be committed to a youth facility while a juvenile convicted of attempted murder in adult court must be sentenced to prison. (*Id.* at pp. 62-63, 69.) In *In re M.A.* (2022) 83 Cal.App.5th 143, the court construed a statute that explicitly prohibited firearm possession only by those adjudicated wards of the court for misdemeanor violations of certain statutes to also refer to felony violations of the same statutes to avoid the absurd result of more serious offenses receiving lesser sanctions. (*Id.* at p. 152.) In *In re Eric J.* (1979) 25 Cal.3d 522, the court rejected a statutory interpretation under which a minor could be confined longer for commission of a felony and a misdemeanor than for commission of the same felony and another felony. (*Id.* at p. 537.) In *People v. Bullard* (2020) 9 Cal.5th 94, the court construed a ballot initiative to avoid punishing those who intend to take vehicles temporarily more harshly than those who intend to take the same vehicles permanently. (*Id.* at pp. 106-108.) Applying the same principle here avoids the absurd consequence of an adult conviction receiving more lenient treatment than a juvenile adjudication for the same infraction.

We also note that the analysis for the bill that enacted subdivision (c)(1) does not contain the same ambiguity as the text of the statute, further confirming our interpretation. The Legislature added subdivision (c)(1) as part of Assembly Bill No. 666 (2015-2016 Reg. Sess.). (Stats. 2015, ch. 368, § 1.) The Assembly Committee on Public Safety explained that the bill would provide " 'better guidance to courts in determining what constitutes "satisfactory completion" of probation or supervision under

9

Section 786' " by specifying two criteria, including " 'that the individual not have been adjudicated or convicted for a new felony or misdemeanor involving moral turpitude during the period of supervision.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 666 (2015-2016 Reg. Sess.) as amended Apr. 9, 2015, p. 6.) This framing removes the ambiguity because "adjudicated" lacks a useful meaning in this context unless it is modified by the phrase "for a new felony or misdemeanor involving moral turpitude during the period of supervision." It is apparent the Legislature intended to treat wardship adjudications and adult convictions equally in determining whether a person completed juvenile probation satisfactorily.

Further, we conclude the words of subdivision (c)(1) indicate both wardship adjudications and convictions must be "for a felony offense or a misdemeanor involving moral turpitude" to disqualify a minor from automatic dismissal and sealing of records under section 786. Based on our construction of subdivision (c)(1), we will reverse the juvenile court's order. Because the juvenile court already found that K.B. substantially complied with the terms of probation, we will also direct entry of the proper order. (See *In re J.G.* (2016) 3 Cal.App.5th 521, 526.)

## DISPOSITION

The juvenile court's order declining to dismiss the June 2021 petition and seal pertinent records is reversed. The matter is remanded with directions to issue an order under section 786, subdivision (a) dismissing the June 2021 petition, finding satisfactory completion of probation, and ordering sealed all records pertaining to the dismissed petition in the custody of the juvenile court, law enforcement agencies, the probation department, or the Department of Justice. The court shall provide a copy of its order and notice of the order's issuance consistent with the statute.

 

 

 

                                                               /s/
                                           BOULWARE EURIE, J.

 

 

We concur:

 

 

        /s/
EARL, P. J.

 

 

        /s/
MAURO, J.